IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| KRISTOPHER KEALOHA, | ) | CIV. NO. 05-00009 JMS-KSC |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| STATE OF HAWAII, et al., | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pro se plaintiff Kristopher Kealoha brings this action against the State of Hawaii Department of Public Safety (DPS) and DPS employee Lee Fields[1] (collectively, "Defendants") based on claimed violations of 42 U.S.C. § 1983, the State of Hawaii constitution Article I, Section 12, and negligence. Keaoloha, a prisoner presently incarcerated at Halawa Correctional Facility (HCF) located in Honolulu, Hawaii, brought this action in State court before its removal to this court.

The defendants now claim that they are entitled to summary judgment as to all three claims; that they are entitled to Eleventh Amendment immunity as to

---

[1] Fields is named in both his official and individual capacity. (Compl. ¶ 3.)

the state law claims; that DPS and Fields in his official capacity are not subject to suit under 42 U.S.C. § 1983; and that Fields is entitled to qualified immunity.  For the reasons stated herein, the court GRANTS the defendants' motion for summary judgment as to the § 1983 claim against DPS and Fields in his official capacity, and DENIES the remainder of defendants' motion.

## I.  FACTS

Kealoha alleges that while incarcerated at HCF he associated himself with a prison gang.  (Compl. ¶ 7.)  Kealoha further claims that he was temporarily housed in HCF's Special Holding Unit after he informed prison officials that he had renounced his membership from the "USO" family gang and feared for his safety after receiving threats on his life from the gang members.  (Id. ¶¶ 9-10.)  The parties agree that on or about November 22, 2004, Fields, a Gang Investigator at HCF, arranged for Kealoha to be transferred from the Special Holding Unit to Module 1, a general population unit.  The parties do dispute, however, whether Kealoha specifically requested the transfer to Module 1 because he no longer had concern for his safety.  In a declaration, Fields states that Kealoha informed Fields that he no longer feared for his safety and requested that he be returned to general population.  Fields explains that Kealoha hoped to be housed with his father in the

general population.  Kealoha, however, presents a different version of events.  He denies telling Fields that he no longer feared for his safety.  Kealoha further claims that he only agreed to be transferred to Module 1 after Fields assured him that no "USO" family gang members were housed there.

Kealoha alleges that on November 24, 2002, after his transfer to Module 1, he was assaulted and battered by several "USO" family gang inmates.

## II.  LEGAL STANDARD

Summary judgment shall be granted when

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); *see also Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  *See id.* at 323.  A moving party without the ultimate burden of persuasion at trial – usually,

but not always, the defendant – has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party must identify for the court "[those] portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." *Porter*, 419 F.3d at 891 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "A genuine dispute arises 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, at 248); "There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion." *Addisu*,

198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv.*, 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. *Porter*, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. *Id.* However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 631.

### III.  DISCUSSION

A.  <u>Defendants Waived Immunity As To Kealoha's Hawaii Constitution Claim And Negligence Claim</u>.

Generally, "[t]he Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (citation omitted); *see also Idaho v. Couer d'Alene Tribe*, 521 U.S. 261, 267-68 (1997). However, a state waives its Eleventh Amendment immunity, as to state law claims, when it removes

a case from state court to federal court. *Lapides v. Board of Regents*, 535 U.S. 613 (2002). The law is clear that "where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." *Id.* at 619 (quoting *Gunter v. Atlantic Coast Line R. Co.*, 200 U.S. 273, 284, 26 S.Ct. 252, 50 L.Ed. 477 (1906)).

In the instant matter, although Defendants were brought involuntarily into the original state court proceeding, Defendants voluntarily removed the matter to federal court on January 5, 2005. In doing so, Defendants voluntarily invoked the federal court's jurisdiction, and waived their Eleventh Amendment immunity as to Kealoha's state constitutional claims and his negligence claim. Defendants' Motion for Summary Judgment as to Kealoha's state constitutional claim and negligence claim based on Eleventh Amendment immunity is therefore DENIED.

B.  <u>Official Capacity Defendants Are Not "Persons" Within The Meaning of § 1983.</u>

Kealoha's claim that Defendants violated his Eighth Amendment rights is before this court pursuant to 42 U.S.C. § 1983. It is firmly established that neither a state nor its employees acting in their official capacity is considered a "person" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66

(1989); *Lapides,* 535 U.S. at 617; *Bank of Lake Tahoe v. Bank of America*, 318 F.3d 914, 918 (9th Cir. 2003).

Defendants, as state agencies or employees, are thus not subject to suit for damages in their official capacities.[2]  Defendants' Motion for Summary Judgment as to Kealoha's claims against DPS and Fields acting in his official capacity under 42 U.S.C. § 1983 is GRANTED.

C.  Defendants Are Not Entitled to Summary Judgment As To Kealoha's Eighth Amendment Claim Or Hawaii Constitution Article 1, Section 12 Claim.[3]

The Eighth Amendment's prohibition against cruel and unusual punishment requires that prison officials take reasonable measures for the safety of inmates.[4]  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  In particular, officials

---

[2] An exception to this rule applies to claims for injunctive relief against a state official in his or her official capacity.  *See Bank of Lake Tahoe*, 318 F.3d at 918.  Because Kealoha seeks only monetary damages and not injunctive relief, this exception is not applicable to the instant case.

[3] To the extent Kealoha asserts a violation of his equal protection rights under the Fourteenth Amendment or Hawaii Constitution Article 1, Section 5, he fails to state a claim upon which relief can be granted.  Kealoha has failed to show that he was a member of a protected class and that defendants discriminated against him on the basis of that class.  *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001).

[4] The cruel and unusual punishment provision of Article 1, Section 12 of the Hawaii Constitution was modeled after the Eighth Amendment provision of the United States Constitution.  Thus, the two doctrines are nearly identical.  Hawaii courts have held that when a plaintiff asserts both a federal and state constitutional claim and the two clauses are virtually identical, federal law will be followed.  *See, e.g., Wilder v. Tanouye*, 7 Haw.App. 247, 254, 753 P.2d 816, 822 (Haw. App. 1988) (federal case law followed in determining state prison inmate's

have a duty to protect inmates from violence at the hands of other inmates. *Id*. at 833.  A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety.  *Id.* at 834.

To be liable for failure to prevent harm, a prison official must know of and disregard an excessive risk to inmate safety.  *Id.* at 837.  The official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *See id.*  A prison official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before [he] is obligated to take steps to prevent such an assault."  *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Before being required to take action a prison official must, however, have more than a "mere suspicion" that an attack will occur.  *Id.* at 459 (summary judgment was appropriate when the plaintiff "failed to come forward with any facts showing that these defendants had any reason to believe he would be attacked by the

---

due process of law claim when he relied on the due process clause of the Hawaii Constitution rather than the United States Constitution).  Therefore, the holding of this court, as set forth below, applies to Kealoha's federal and state constitutional claim against cruel and unusual punishment.

assailant") *Id.* at 460.

When, as here, an inmate is seeking damages against a defendant, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). *Leer* explained that "it is important to distinguish the causal connection required when a plaintiff seeks injunctive or declaratory relief as opposed to damages." *Id.* When a plaintiff seeks injunctive or declaratory relief a broader, more generalized approach to causation is taken. *See id.* When a plaintiff, however, seeks to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the alleged Eighth Amendment deprivation is more refined:

> [The court] must focus on whether the individual defendant was in a position to take steps to avert the [harm], but failed to do so intentionally or with deliberate indifference. In order to resolve this causation issue, [the court] must take a very individualized approach which accounts for the duties, discretion, and means of each defendant. . . . Sweeping conclusory allegations will not suffice to prevent summary judgment. . . . The prisoner must set forth specific facts as to each individual defendant's deliberate indifference.

*Id.* at 633-34 (citations omitted).

As set forth above, Kealoha's allegations require an individualized analysis of Fields' duties as a Gang Investigator. As a Gang Investigator, Fields was certainly expected to be aware of gang activities and gang members within HCF. In addition, it is reasonable to expect that Fields knew or should have known where members of Kealoha's former gang were housed. Moreover, as a Gang Investigator, Fields knew or should have known the consequences of placing Kealoha in the same housing facility as members of his former gang.

It is within this context that Kealoha and Fields have presented conflicting evidence regarding the circumstances surrounding Kealoha's transfer from the Special Housing Unit to Module 1. Viewing the facts in the light most favorable to Kealoha, Kealoha: 1) renounced his "USO" gang membership; 2) had his life threatened because he renounced his membership; 3) was transferred by Fields – a person specifically tasked with investigating gang activity within HCF – to the Special Holding Unit; 4) continued to fear for his safety while in the Special Holding Unit; and 5) only agreed to be transferred to Module 1 after Fields assured him that none of his former gang members was housed there. A trier of fact could determine that Fields, as a Gang Investigator, may have acted with deliberate indifference to Kealoha's safety when viewing the facts in the light

most favorable to Kealoha.

A genuine issue of fact exists regarding whether Kealoha told Fields that he no longer feared for his safety. Additionally, a genuine issue of fact exists regarding whether Kealoha specifically requested to be transferred from the Special Housing Unit to Module 1. As the court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage, Defendants' Motion for Summary Judgment as to Kealoha's Eighth Amendment claim against Fields, individually, and Kealoha's Hawaii Constitution Article 1, Section 5 claim against all Defendants is DENIED.[5]

D.   <u>Fields is Not Entitled to Qualified Immunity as to Kealoha's Federal Claims</u>.

Fields asserts that he is entitled to qualified immunity. The court disagrees. *Saucier v. Katz*, 533 U.S. 194 (2001), sets forth a two-step inquiry for determining whether qualified immunity applies to federal constitutional claims. First, "[t]aken in the light most favorable to the party asserting the injury, . . . the

---

[5] Although Defendants do not specifically address Kealoha's negligence claim in their Motion for Summary Judgment, this court's holding as to the Eighth Amendment claim forecloses summary judgment as to the negligence claim. Specifically, taking the facts as alleged by Kealoha, a trier of fact could also determine that Fields acted negligently if he knew or should have known that "USO" family gang members were housed in Module 1, but transferred Kealoha there anyway.

11

facts alleged [must] show [that] the officer's conduct violated a constitutional right." *Id.* at 201. This prong of the *Saucier* inquiry "mirrors the substantive summary judgment decision on the merits." *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). "If no constitutional right would have been violated were the allegations established," the inquiry ends. *Saucier*, 533 U.S. at 201. If there appears to have been a constitutional violation, however, the second step is to determine whether the right in question was "clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Id.*; *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004).

An inmate has a constitutional right to be protected from assault, if prison officials are, or should have been aware of the danger. As detailed above, facts are in dispute as to whether Fields violated Kealoha's constitutional right to be free from cruel and unusual punishment by his failure to protect him from assault. If the facts as alleged by Keahola are proven, Fields is not entitled to qualified immunity as to the federal law claims.

E.  Fields is Not Entitled to Qualified Immunity as to Kealoha's State Law Claims.

The only remaining issue is whether Fields enjoys immunity from the state law claims asserted against him. Under Hawaii law, it is well established that a nonjudicial government official performing a public duty enjoys the protection

12

of a qualified privilege. *See. e.g., Towse v. State of Hawaii*, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982); *Medeiros v. Kondo*, 55 Haw. 499, 522 P.2d 1269, 1272 (1974). When an official, however, "in exercising his authority is motivated by malice, and not by an otherwise proper purpose, . . . he should not escape liability for the injuries he causes." *Id.* at 1271. "For an action to lie against an official acting under a claim of privilege, it is essential that the injured party allege and prove that the official was motivated by malice and not an otherwise proper purpose." *Pahk v. Hawaii*, 109 F. Supp. 2d 1262, 1269 (D. Haw. 2000).

The record before the court is devoid of any specific allegations that Fields acted maliciously. Kealoha's Complaint, however, alleges that Defendants acted "*intentionally*, and/or recklessly, and with deliberate indifference for Plaintiff's rights" and "caused Plaintiff to be deprived of his Constitutional rights of the State of Hawaii . . . ." (Compl. at 7) (emphasis added). Kealoha's Complaint further asserts that Defendants "failed to provide safe housing to the Plaintiff, away from the general population where members of the gang that the Plaintiff had formerly belonged to were being housed." (Id. at 8.) And, those "acts of Defendants . . . constitute negligence and/or gross negligence under the laws of the State of Hawaii." (Id.) Although Kealoha does not specifically allege malice, given Kealoha's incarceration, pro se status at the summary judgment stage, and the allegations set forth above, the court infers that Kealoha alleges that Fields acted maliciously when he transferred Kealoha from the Special Housing

13

Unit to Module 1.

It remains then to ascertain whether there exists a genuine issue of malice as a material fact. "The existence or absence of malice is generally a question for the jury." *Black v. City & County of Honolulu*, 112 F. Supp. 2d 1041, 1048-49 (D. Haw. 2000) (quoting *Runnels v. Okamoto*, 56 Haw. 1, 525 P.2d 1125, 1129 (1974)). However, "when this issue has been removed from the case by uncontroverted affidavits and depositions, and the moving party is entitled to judgment as a matter of law, summary judgment will be granted." *Towse*, 647 P.2d at 703.

Here, the issue of malice has not been removed by uncontroverted affidavits or depositions. Kealoha and Fields have presented conflicting evidence regarding the circumstances surrounding Kealoha's transfer from the Special Housing Unit to Module 1. As set forth above, Fields states that Kealoha informed Fields that he no longer feared for his safety and requested that he be returned to general population. Kealoha, however, denies telling Fields that he no longer feared for his safety. Kealoha further claims that he only agreed to be transferred to Module 1 after Fields assured him that no "USO" family gang members were housed there. Just as a trier of fact could determine that Fields may have acted with deliberate indifference to Kealoha's safety, a trier of fact could also determine that Fields, as a Gang Investigator and a person specifically tasked with investigating gang activity within HCF, may have acted with malice when he

transferred Kealoha from the Special Housing Unit to Module 1, when viewing the facts in the light most favorable to Kealoha.  The existence of malice in this case is, therefore, a factual question for the trier of fact.  At this time, Fields is not entitled to qualified immunity as to Kealoha's state law claims.

## CONCLUSION

As set forth above, Defendants' Motion for Summary Judgment is DENIED IN PART AND GRANTED IN PART.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 20, 2006.



/s/ J. Michael Seabright
_J. Michael Seabright_
_United States District Judge_

*Keahola v. State of Hawaii, et al.*, Civ.No. 05-00009 JMS/KSC, Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; hmg/Orders 06/Kealoha 6 order